CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COM-
PANY V. A. K. GRIFFITH ET AL.

FILED APRIL 5, 1895.   No. 6285.

1. **Witnesses:** EMINENT DOMAIN: EVIDENCE OF DAMAGE.
While it is not competent to show the price at which other
property has been sold for the purpose of proving the value of
that taken for railroad purposes, yet if, on cross-examination of
witnesses for the adverse party, the railroad company adopts
that line of inquiry, error will not be presumed from a re-ex-
amination confined to such line followed on cross-examination.

2. **Eminent Domain:** EVIDENCE OF DAMAGE: REVIEW.   Error
cannot be predicated upon the mere fact that witnesses under ex-
amination as to the value of several lots in the same immediate

neighborhood in arriving at their value estimated that of one class, then, having considered wherein that class differed from another, qualified their estimates of the value of the latter class by taking into consideration the cost of removing such difference when such removal was by such witnesses deemed practicable and advisable.

3. **Review**: AFFIDAVIT FOR NEW TRIAL: BILL OF EXCEPTIONS. An affidavit in support of a motion for a new trial, to be available on error, must be embodied in a bill of exceptions, and alleged errors not excepted to will not be considered.

ERROR from the district court of Lancaster county. Tried below before STRODE, J.

The facts are stated by the commissioner.

*L. W. Billingsley* and *R. J. Greene*, for plaintiff in error:

The measure of damages is the market value of the land at the time and in the condition it was taken. Testimony in conflict with this rule is inadmissible. (*Blakeley v. Chicago, K. & N. R. Co.*, 25 Neb., 207; *Republican Valley R. Co. v. Arnold*, 13 Neb., 485; *Harris v. Schuylkill R. E. S. R. Co.*, 21 Atl. Rep. [Pa.], 590; *Louisville & N. R. Co. v. Ingram*, 14 S. W. Rep. [Ky.], 534; *Louisville & N. R. Co. v. Asher*, 15 S. W. Rep. [Ky.], 517; *San Francisco & N. P. R. Co. v. Taylor*, 24 Pac. Rep. [Cal.], 1027; *Central P. R. Co. v. Pearson*, 35 Cal., 247; *Spokane & P. R. Co. v. Lieuallen*, 29 Pac. Rep. [Idaho], 854; *Lewis, Eminent Domain*, sec. 499; *Omaha B. R. Co. v. McDermott*, 25 Neb., 715; *Marsh v. Snyder*, 14 Neb., 237; *State Historical Association v. City of Lincoln*, 14 Neb., 336; *First Nat. Bank v. Carson*, 30 Neb., 108; *McCartney v. Territory of Nebraska*, 1 Neb., 121; *McGean v. Manhattan R. Co.*, 22 N. E. Rep. [N. Y.], 957; *Lawrence v. Metropolitan E. R. Co.*, 8 N. Y. Sup., 326; *Sherlock v. Chicago, B. & Q. R. Co.*, 130 Ill., 403.)

There is no presumption that a witness is competent to

give a reliable estimate of the market value of land. There should be a showing of his knowledge of values. (*Missouri P. R. Co. v. Coon*, 15 Neb., 233; *Republican Valley R. Co. v. Arnold*, 13 Neb., 485; *Fremont, E. & M. V. R. Co. v. Whalen*, 11 Neb., 587.)

*Adams & Scott, contra*, as to the measure of damages and the methods of determining the amount, cited: *Boom Co. v. Patterson*, 98 U. S., 403; *Providence & W. R. Co. v. City of Worcester*, 26 N. E. Rep. [Mass.], 59; *Commissioners of Parks & Boulevards v. Moesta*, 51 N. W. Rep. [Mich.], 903; *Colorado M. R. Co. v. Brown*, 15 Col., 193; *Louisville, N. O. & T. R. Co v. Ryan*, 64 Miss., 399; *Watson v. Milwaukee & M. R. Co.*, 57 Wis., 332; *King v. Minneapolis U. R. Co.*, 32 Minn., 224; *St. Louis, J. & S. R. Co., v. Kirby*, 10 Am. & Eng. R. Cases [Ill.], 214; *Kansas City & S. W. R. Co. v. Baird*, 21 Pac. Rep. [Kan.], 227; *Fremont, E. & M. V. R. Co. v. Meeker*, 28 Neb., 97.

As to admissibility of evidence and examination of witnesses the following authorities were cited: *Somerville & E. R. Co. v. Doughty*, 22 N. J. Law., 495; *Jaspers v. Lano*, 17 Minn., 296; *Schlencker v. State*, 9 Neb., 241; *Carr v. Moore*, 41 N. H., 131; *Blewett v. Tregonning*, 3 Ad. & El. [Eng.], 554; *Greville v. Chapman*, 5 Q. B. [Eng.], 731; *Donnelly v. State*, 26 N. J. Law., 463; *Wyman v. Lexington & W. C. R. Co.*, 54 Mass., 316; *Spring Valley Water-Works v. Drinkhouse*, 28 Pac. Rep. [Cal.], 682; *Northeastern N. R. Co. v. Frazier*, 25 Neb., 53; *Burlington & M. R. Co. v. Schluntz*, 14 Neb., 421; *Sioux City & P. R. Co. v. Weimer*, 16 Neb., 272.

Affidavits used in evidence below will not be considered in the appellate court when not preserved by a bill of exceptions. (*City of Plattsmouth v. Boeck*, 32 Neb., 299; *Strunk v. State*, 31 Neb., 119; *McCarn v. Cooley*, 30 Neb., 552; *Burke v. Pepper*, 29 Neb., 320; *Ray v. Mason*, 6 Neb., 101; *Barton v. McKay*, 36 Neb., 632.)

RYAN, C.

Error proceedings in this case are prosecuted to reverse a judgment of the district court of Lancaster county. Originally, on the application of the plaintiff in error, there was an award of damages caused by taking certain lots of the defendants in error situated in Saulsbury Addition to the city of Lincoln. This award was unsatisfactory to the defendants in error, and they appealed to the aforesaid district court, wherein, upon a trial had, the award was considerably increased. Such errors only as are deemed essential will receive consideration, and these as briefly as possible.

A. K. Griffith, one of the defendants in error, in his testimony described the property in Saulsbury Addition which had been appropriated by the railroad company, as well as its location, and gave his estimate of its value before its appropriation. This was limited to such lots as were owned by the defendants in error. On cross-examination this witness testified as follows:

Q. Before the railroad was projected through there, and before its coming had any influence upon the market value of property there, do you know of any sales being made in that neighborhood?

A. Oh, yes.

Q. Where?

A. On Seventeenth street there.

Q. North of Vine?

A. North of Vine; yes, sir.

Q. How far from your property?

A. About 100 feet—something over 100 feet.

Q. How far did these lay from Vine street?

A. I don't know exactly which lots it was. I knew of a couple of lots selling in there, probably 300 or 400 feet from Vine.

Q. Who sold them?

A. Tom Beach sold one, and I forget who else.

Q. What month did Tom Beach sell?

A. I don't know the month.

Q. Will you swear it was in 1892?

A. No, I would not.

Q. Will you swear it was in 1891?

A. I feel pretty sure, but I wouldn't swear.

Q. What was the size of that lot?

A. Those lots were 50 by 175 feet.

Q. Was the lot you speak of Beach selling a vacant lot?

A. Yes, sir.

Q. What did he get?

A. I don't know exactly; about a thousand dollars, I think.

Q. That was 50 by 175?

A. I would not say positively, I think it was though.

Q. That is the size you gave?

A. That is the size I think it was.

On redirect examination there was answered the following question under objections as indicated, to-wit:

Q. In answer to some questions of Mr. Wilson's, Mr. Griffith, you said you knew of some other lots selling over there—Beach's lots. What did they sell for, if you know?

Objected to, as incompetent, irrelevant, and immaterial, and the evidence now shows that the Beach lots were purchased by the defendant for the purpose of the location of their railroad. Overruled. Exception.

A. The lowest price and lot sold for on that alley, 25 by 95 feet they were, was $300 from that up.

When this question and answer were first considered it appeared to us that the court erred in its ruling, for it was immaterial what had been paid for other lots, and evidence to that effect seemed incompetent. The fact that this testimony was elicited on re-examination was not alone suffi-

cient to render it competent, for it was directed to the
establishment of an essential fact, upon the existence of
which plaintiff's right of recovery depended; that is, the
value of the land of plaintiffs which had been appropriated
to the use of the railroad company.    What was the market
value of the particular property taken from defendants in
error was an important question in this case. (*Blakely v.
Chicago, K. & N. R. Co.*, 25 Neb., 212; *Omaha Belt R.
Co. v. McDermott*, 25 Neb., 715.)    The question asked
and answered had reference to the value of other property,
—a consideration entirely foreign to that just stated.    A
more critical analysis of the cross-examination of Mr.
Griffith, however, disclosed the fact that therein he had
been asked what Mr. Beach got for a lot, and he had an-
swered $1,000.    It is possible that this use of the word
"lot" may have been with reference to a tract as distin-
guished from a technically designated city lot.    On cross-
examination the price received by Mr. Beach was described
as $1,000.    On re-examination the lowest price of any lot
sold was given as $300; "they were from that on up,"
said the witness.    Thus the railroad company had shown
a valuation of $1,000 on a single lot, while by the re-ex-
amination of Mr. Griffith no sale had been shown for a
figure given in excess of $300.    If, as has been already sug-
gested, this $1,000 for a vacant lot referred to a tract (per-
haps greater in area than a city lot), we are not at all justi-
fied thereby in assuming that the admission of the evidence
noted on re-examination was prejudicial to the railroad
company.    The existence of such prejudice is rendered
still more problematical by a consideration of the cross-ex-
amination of Mr. Griffith, which followed his re-examina-
tion above noted, which cross-examination was as follows:

Q. You say the lowest of them was sold for $300?

A. That is the lowest price I heard.

Q. Why didn't you state that all that sold above $300
had improvements on?

A. All that sold above $300 did not have improvements on.

Q. Which one did not?

A. Those on the south side—Prof. Little's lots.

Q. You were not asked about Little's lots. You were asked about Beach's lots. Why didn't you say all the rest of Beach's lots had improvements on them? You were willing for this jury to think, from your testimony, that some of Beach's lots, without improvements on them, sold for more than $300?

A. Yes, sir.

Q. Where are they?

A. I pointed them out as near as I could.

Q. On the Beach addition?

A. Maybe I didn't understand your question.

Q. Were any lots in Beach's addition sold for more than $300 without improvements on them?

A. No.

Q. Then why did you say $300 was the lowest price?

A. I will tell you why. There were several sold in there that had what they called improvements on them. They had a shanty on them that he couldn't sell for $1. They sold for $500.

In view of the confusion as to the sale of these Beach lots, as illustrated by all of the above quotations from the testimony of Mr. Griffith, we cannot now say that his re-examination was prejudicial error.

In regard to other evidence of Mr. Griffith there is presented a question quite similar to that just considered. On his cross-examination he was asked by counsel for the railroad company what he paid in 1889 for the property appropriated. His answer was as follows:

I gave as good a quarter section as is in the county, and they got $500 to boot, and since that I have paid out over $2,000.

Q. With whom did you trade?

A. Billy McLaughlin, and I thought I got it awful cheap.

On redirect examination Mr. Griffith testified that the $2,000 expended was to get Eighteenth street through; that is, was paid for property necessary to give him an outlet. He was then asked what was the value of the quarter section above referred to when he made the exchange for the property appropriated by the railroad company. This was objected to as incompetent, irrelevant, and immaterial, and because no foundation had been laid for its introduction. These objections were overruled, and exceptions taken thereto, after which the witness answered that it was worth $45 per acre. In the first instance it would not have been competent for Mr. Griffith to show what he paid for this property as furnishing a basis for an estimate of its value. (*Dietrichs v. Lincoln & N. W. R. Co.*, 12 Neb., 225; *Omaha S. R. Co. v. Todd*, 39 Neb., 818.) It was, however, proper for counsel for the railroad company to ask this, for the purpose of showing that while Mr. Griffith now claimed its value to be very great, he had in fact but recently obtained it for a comparatively small consideration. The tendency of the evidence of the character elicted on cross-examination was to dispute the claims of Mr. Griffith and discredit his testimony as to the real value of the property which he had acquired. The mere fact that he had exchanged property of an uncertain value for that appropriated left it open to argument as to whether or not his present claims and testimony were inconsistent with the actual consideration really paid. To remove this uncertainty it was proper to show on a re-examination of this witness after this aforesaid cross-examination what was the actual value of that part of the consideration paid in property. This did not sanction the introduction of testimony of this character for the purpose of reinforcing the direct evidence of this party in making his case originally. It was admissible solely because an

opening, and, perhaps necessity for it, had been created by cross-examination.

There appears in the transcript of the pleadings in this case an affidavit of J. E. Philpott, who acted as counsel for the railroad company, to the effect that while affiant was in the court room the jury in this case came in and, in the language of the affiant, "asked the court to have the reporter read that part of the evidence in said case as to whether Griffith paid $500 in the trade of the farm for the lots in question, or the purchaser paid Griffith $500 in the trade, and such part of the evidence was by order of the court read to the jury and the jury thereupon retired to the jury room." From the fact that the reading of evidence by the reporter to the jury relative to payment of $500 was the subject-matter of the twenty-seventh ground urged for a new trial we are at liberty to assume that this affidavit may have been attached to said motion. It is not now available, for two sufficient reasons, one of which is that no exception was taken to this action of the court by Mr. Philpott; the other is that this affidavit was not made part of a bill of exceptions. The judge who presided at the trial certified that the bill of exceptions presented by the railroad company's attorney contained all the evidence offered. The above affidavit not appearing in it, must therefore be assumed not to have been used for any purpose.

It was shown by the evidence that a portion of the lots appropriated were quite level, and that through others there was a draw, or a depression of a portion of the surface, by reason of which fact alone those in the latter class were not as valuable as those in the former. Different witnesses for the defendants in error, in the course of their examination, gave their estimates of the value of those lots which were level, and in speaking of those not in that class said they were as valuable if the draw or depression referred to was filled up, and in this connection there was given testimony as to what would be the probable cost of

Chicago, R. I. & P. R. Co. v. Griffith.

this filling. It is quite evident that the means of knowledge of some who made estimates of this kind were quite limited. It might not have been improper to exclude their estimates, and yet we cannot say that this was the imperative duty of the district court. This method of comparison was not improper, for it is probable that very few pieces of property will be found the exact counterparts of others. Where the witnesses explain, as they did in this case, wherein the difference lies, and give their estimates of what it would cost to make one like the other when they deem this advisable and practicable, we see no impropriety in permitting this to be done. The trial court is not bound to do this, indeed there might be such an abuse of this method of making comparative estimates that prejudicial error must be inferred. In this case no such condition of affairs exists, for the witnesses, having first given their estimates of the value of the property, on further examination showed merely how they made their estimates. As is usual, where the real value of property is under consideration, there was a want of uniformity in valuations placed upon the property appropriated. The verdict, however, had the support of sufficient evidence to sustain it and will not be disturbed as lacking support of proof, sanctioned as it has been by the overruling of a motion for a new trial in which was presented that question. The judgment of the district court is

AFFIRMED.