[Civil No. 2266.    Filed October 9, 1925.]

[239 Pac. 787.]

# FRED BLAIR TOWNSEND, Appellant, v. MURRAY SHIPLEY, Appellee.

1. PRINCIPAL AND AGENT — EVIDENCE HELD TO SHOW THAT RELATION OF "AGENCY" DID NOT EXIST.—Evidence that plaintiff purchased land of defendant, held under option unknown to plaintiff, with no showing of employment of defendant to make purchase, and only contract proved was one of purchase and sale with parties treating each other as vendor and vendee, *held* to show that relation of "agency," which imports commercial dealings between two parties, through medium of another, did not exist.

2. TRIAL — WHERE NO EVIDENCE OF RELATION OF AGENCY, ERROR TO GIVE INSTRUCTIONS ON SUCH THEORY.—In action to recover profits of a real estate transaction, where there was no evidence of relation of principal and agent, it was error to instruct jury as though evidence supported theory of agency.

3. ATTORNEY AND CLIENT—RULE ALLOWING CLIENT TO REPUDIATE CONTRACT WITH ATTORNEY ON SUBJECT MATTER OF LITIGATION APPLIES TO SALE OF PROPERTY BY ATTORNEY TO CLIENT.—Rule that contract between attorney and client concerning subject matter of litigation may be repudiated by client, unless all material facts are disclosed and shown to be eminently fair and just, applies equally to a sale of property by attorney to client during existence of relationship, and is based on public policy.

4. ATTORNEY AND CLIENT—DAMAGES OF CLIENT, CHOOSING TO RATIFY CONTRACT WITH ATTORNEY IN PURCHASE OF LAND, ARE DIFFERENCE BETWEEN CONTRACT PRICE AND VALUE AT TIME OF PURCHASE.—A client, purchasing property from attorney, who chooses to ratify contract, can only recover such damages as he has sustained, which is difference between contract price and value of land at time of purchase, not difference between contract price and amount paid by attorney.

5. ATTORNEY AND CLIENT—REMEDIES OF CLIENT IN CONTRACT WITH HIS ATTORNEY ARE TO REPUDIATE CONTRACT AND PLACE PARTIES IN STATU QUO, OR AFFIRM CONTRACT AND RECOVER DAMAGES.—The remedy of a client with reference to contracts with his attorney, though no fraud shown, is same as in cases of fraud,

2.   See 14 R. C. L. 786.
3.   See 2 R. C. L. 968.

namely, to repudiate contract and put parties *in statu quo,* or affirm contract and recover damages.

6. ATTORNEY AND CLIENT—VERDICT REVERSED, AS NOT JUSTIFIED BY EVIDENCE OF DAMAGE.—In action by plaintiff to recover profits of a real estate purchase from his attorney at $110 per acre, where plaintiff submitted no evidence on his allegation that land was worth only $75 per acre, but defendant's witnesses showed land to be worth $100 and from $120 to $150 per acre, a verdict based on value of land at $75 per acre will be reversed, as not justified by the evidence.

See (1) 2 C. J., p. 954.    (2) 38 Cyc., p. 1618.    (3) 6 C. J., p. 687. (4) 6 C. J., p. 711.    (5) 6 C. J., p. 687.    (6) 6 C. J., p. 687.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Dudley W. Windes, Judge. Reversed and remanded, with directions.

Messrs. Ward & Griffith and Mr. Earl F. Drake, for Appellant.

Mr. J. E. Morrison, for Appellee.

ROSS, J.—On May 26, 1920, Murray Shipley, Jr., plaintiff, bought of Fred Blair Townsend, defendant, one hundred and sixty acres of land, paying therefor $110 per acre. It afterwards came to plaintiff's attention that defendant paid the owner of the land, one Allison, only $75 per acre. Plaintiff brought this action to recover the difference of $35 an acre, amounting to $5,600, upon the theory, first, that defendant, in purchasing the land of Allison, was acting as plaintiff's agent, and therefore could take no secret profit to himself; and, second, that defendant was his legal adviser (defendant being an attorney at law actively engaged in the practice), and in seeking to make a profit violated his trust, entitling plaintiff to recover the overplus. A jury trial resulted in a verdict and judgment in favor of plaintiff for the sum of $4,000. The defendant has appealed, urging errors in the refusal of the court (1) to direct a verdict in his favor; (2)

in misdirecting the jury as to the law of the case; and (3) the insufficiency of evidence to support the verdict and judgment.

The evidence indisputably is to the effect that plaintiff treated with defendant directly as the owner of the land, and believed he was buying it from defendant. As a matter of fact, defendant at the time of the deal, and at the time negotiations were commenced looking to the sale, was not the owner of the land. Defendant's evidence is all to the effect that he had, before he offered to sell the property to plaintiff, a written option to buy the land from Allison at $75 per acre. This contention is disputed by plaintiff, and some circumstances disclosed indicate that defendant may have taken an option on land from Allison for the sole purpose of selling it to plaintiff.

The only contract proved or shown by the evidence is one of purchase and sale. Plaintiff did not, according to the evidence, employ defendant to purchase the land, or any land, and defendant did not agree to or undertake to purchase the land, or any land, for plaintiff. The evidence clearly and indisputably shows they treated with each other as vendor and vendee. The relation of principal and agent did not exist. The defendant, in purchasing the land from Allison, did not represent, act for, or derive his authority from plaintiff as his principal, and, in treating with Allison, defendant did not stand in plaintiff's place. His contract with Allison was not plaintiff's contract, as the plaintiff knew nothing whatever about such contract, or from whom or when defendant bought land, or the price he paid. Plaintiff did not ask defendant what he had paid for land, and defendant made no statement as to what it cost him.

"Agency, in its legal sense, always imports commercial dealings between two parties by and through

the medium of another. An agent negotiates or treats with third parties in commercial matters for another." *Kingan & Co.* v. *Silvers,* 13 Ind. App. 80, 90, 37 N. E. 413, 416.

"The most characteristic feature of an agent's employment, in a legal sense, is that he is employed primarily to bring about business relations between his principal and third persons, and this power is perhaps the most distinctive mark of the agent as contrasted with others, not agents, who act in representative capacities." 2 C. J. 421.

In the language of the court in *Central Georgia Land & Lumber Co.* v. *Exchange Bank of Macon,* 101 Ga. 345, 351, 28 S. E. 863–865:

"We are not prepared to hold that the fiduciary relation of principal and agent can properly be said to exist between two persons, neither of whom is clothed with any authority whatsoever to bind or in any manner represent the other with regard to any negotiation or transaction with third persons, whose entire business dealings with each other are confined to matters in which third persons have no immediate interest or concern, and who at all times deal at arm's length, each avowedly representing no one but himself, and undertaking to look after his individual interests only."

Since there was no evidence of the existence of the relation of principal and agent, and since there was a total failure to sustain the theory that defendant had been employed by plaintiff to purchase said land for plaintiff, it is clear the court erred in instructing the jury as though the evidence supported such theory. As before stated, the evidence clearly shows the contract between the defendant and plaintiff to be that of vendor and vendee, and negatives any authority from plaintiff to defendant to bind plaintiff in any contract relation with any third party to purchase said land, or any other land, for the plaintiff.

This brings us to the theory of plaintiff's case, to the effect that the defendant was at the time of such transaction plaintiff's legal adviser, and as such under legal obligation to refrain from taking any advantage of plaintiff or making any profit on such sale to plaintiff. This contention is unimpeachable as a legal proposition. The rule as to dealings between attorney and client is stated in 6 C. J. 686, section 211, as follows:

"The relation of attorney and client has always been regarded as one of special trust and confidence. The law therefore requires that all dealings between an attorney and his client shall be characterized by the utmost fairness and good faith, and it scrutinizes with great closeness all transactions had between them. So strict is the rule on this subject that dealings between an attorney and his client are held, as against the attorney, to be *prima facie* fraudulent, and to sustain a transaction of advantage to himself with his client the attorney has the burden of showing, not only that he used no undue influence, but that he gave his client all the information and advice which it would have been his duty to give, if he himself had not been interested, and that the transaction was as beneficial to the client as it would have been, had the client dealt with a stranger. . . . It has been held in some cases that all such transactions are voidable at the election of the client; but the better rule, and the one established by the preponderance of the authority, does not go so far. There is no necessary incapacity for dealing between client and attorney, and although transactions between them will be closely scrutinized, yet those which are obviously fair and just will be upheld. To entitle the client to relief from a contract or agreement entered into with his attorney, it must be shown that the client has suffered some injury through an abuse of confidence on the part of his attorney." 1 Thornton on Attorneys at Law, § 157.

All of the adjudicated cases that we have been able to find have been where the attorney has entered into some deal with the client by which he acquired the subject matter of the litigation, or where he has, with or without the knowledge or consent of his client, purchased or sold the property that he had been employed to defend. In all such cases the courts have invariably held such transactions subject to repudiation by the client, unless it was made to appear that all the material facts were fully known and appreciated, and that the deal was eminently fair and just to the client. On principle, we think the rule is equally applicable to a sale of property by the attorney to his client during the existence of the relation. The attorney is not permitted to take advantage of the trust and confidence of his client, or of the influence or power he may be able to exert because of that relation, to make any deal with him, whether it be concerning the attorney's own property or that of his client; or, if he does make such a deal, it is incumbent upon him to show that he used no undue influence, but that he gave his client all the information and advice which it would have been his duty to give, if he himself had not been interested, and that the transaction was as beneficial to his client as it would have been, had the client dealt with a stranger.

The rule that forbids an attorney from entering into business deals or transactions with his client while that relation exists is one of public policy. As is said in *Hamilton* v. *Allen,* 86 Neb. 401, 28 L. R. A. (N. S.) 723, 125 N. W. 610:

"The power to enforce this rule does not depend upon proof of actual fraud. Its application is the same, whether attorneys abuse their trust or act on generous impulses, to assume risks and burdens of clients who are poor. Its enforcement does not involve an inquiry into the motives which prompt

clients to sue for profits, when viewed from an ethical standpoint. Solicitude for them on account of their improvident contracts is not the basis of relief. The doctrine is founded on public policy. It is demanded by the welfare of society. It arises from the necessity of protecting proper relations of trust and confidence wherever they exist. Adherence to a principle which deprives fiduciaries of undue profits lessens the temptation to violate confidential relations."

But, granting the relation of attorney and client finds support in the evidence, the question is: Has the plaintiff shown himself entitled to the relief sought? In the present form of action, plaintiff does not seek to have the contract of sale rescinded, but asks that defendant be compelled to pay plaintiff his damages, estimated at $5,600. Although, under the evidence, plaintiff would doubtless in a proper form of action be entitled to have a rescission and cancellation of the contract, and to be placed *in statu quo,* having chosen to ratify and confirm the contract, he must now be satisfied to accept such damages as he may be able to show he has sustained. In this form of action, what defendant paid for the land is immaterial, as is also his failure to inform plaintiff that he had only paid $75 per acre for it; the only question being whether it was at the time of the transaction worth less than $110 per acre. If it was worth less, the law, because of the relation existing between plaintiff and defendant at the time, will not permit defendant to retain, to the damage of plaintiff, the excess over such value.

We think the remedies available to a client with reference to contracts entered into with his attorney are, even though no fraud be shown, the same as in cases of fraud:

"He may repudiate the contract, and, tendering back what he has received under it, may recover what

he has parted with or its value; or he may affirm the contract, keeping whatever property or advantage he has derived under it, and may recover in an action of deceit the damages caused by the fraud." *Fields* v. *Brown*, 160 N. C. 295, 76 S. E. 8.

See, also, *Union Nat. Bank* v. *Mailloux*, 27 S. D. 543, 132 N. W. 168.

It is necessary to reverse the case for two reasons: First, because of the error in submitting to the jury the question of agency, there being no evidence in support thereof; and, second, because the evidence on the question of the value of land does not justify or support the verdict. The plaintiff alleged in his complaint that the land was not of a value to exceed $75 per acre. He submitted no evidence in support of that allegation. The defendant, however, introduced evidence of the value of the land, most of which was to the effect that it was worth from $120 to $150 per acre at the time of the transaction; but one of defendant's witnesses testified that "100 [per acre] would be a fair valuation of it." This is the only evidence that land was worth less than plaintiff paid for it, and, if it should be accepted as against the testimony of defendant's other witnesses, to the effect that land was worth from $120 to $150 per acre, it would not support a verdict for $4,000, but for only $1,600.

For the reasons stated, the judgment is reversed and the cause remanded, with directions that further proceedings be had not inconsistent with this opinion.

McALISTER, C. J., and LOCKWOOD, J., concur.