KENNETH M. SCHMAILZL ET AL., APPELLEES, v. STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLANT.

126 N. W. 2d 821

Filed March 13, 1964. No. 35583.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, Asa A. Christensen, Lyle C. Winkle, Richard L. Dunning, and William J. Orester, for appellant.

Ginsburg, Rosenberg & Ginsburg and Norman Krivosha, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is a condemnation action involving the entire taking of Lot 11, Block 5, North Lincoln Addition to the City of Lincoln, commonly described as 730 W Street, and all improvements thereon. The action was brought by the State of Nebraska, hereinafter referred to as State, to acquire the property for highway purposes involving the construction of a controlled-access highway to Interstate Highway No. 80. By the time of the trial the property had been incorporated into the interstate highway system of the state.

The owners of the property were Kenneth M. Schmailzl and Patricia M. Schmailzl, husband and wife, who will hereinafter be referred to as condemnees. The improvements on the property consisted of a seven-room

modern house and a garage. The lot was enclosed by a steel-wire and picket fence. W Street at this point was unpaved, but the street had been graveled by the condemnees. Eighth Street, which was the street to the east of the property, was paved.

The petition for condemnation was filed in the county court on March 6, 1962. The appraisers appointed by the county judge assessed the damages at $4,250. Condemnees appealed to the district court. The district court jury returned a verdict for $6,000 and the State has perfected this appeal from the judgment entered thereon.

The State alleges eight assignments of error which we condense to four, as follows: (1) The admission of the testimony of Kenneth King who appraised the property in July 1961; (2) the overruling of the objection of the State to the testimony by one of the owners of the property as to the purchase price and the cost of the materials used in making improvements; (3) the overruling of the objections on the part of the State to the testimony of one of the owners as to value; and (4) the admission in evidence of photographs of portions of the property.

Condemnee's chief witness as to value, other than condemnee Kenneth M. Schmailzl, who for convenience herein will be referred to as owner, was Kenneth King. Kenneth King at the time of the trial and at the time he made his appraisal was the secretary and loan appraiser for the Union Loan and Savings Association of Lincoln, Nebraska. He was a senior member of the Society of Residential Appraisers and had appraised in excess of 3,000 Lincoln residential properties. The State does not challenge his qualifications or that of the owner to give an opinion, but does challenge the competency and the relevancy of those opinions.

The condemnees in July 1961, secured a loan on the property involved herein from the Union Loan and Savings Association. Kenneth King appraised it for loan pur-

poses. During the course of his appraisal, he used a check list or appraisal form which was filled out by an associate who inspected the property with him. This sheet described the nature of the improvements on the property, and was admitted in evidence over the objection of the State. The property had been entirely destroyed by the time of the trial and the exhibit was properly received to describe the nature of the improvements on the premises.

Kenneth King testified that at the time of making the mortgage loan in July 1961, the property had a reasonable market value of $6,000, and the mortgage loan was based on that appraisal. It was his intention to be conservative and to appraise the property slightly under the sales market. He further testified that property values had shown a slight increase subsequent to the time of his loan appraisal. He saw the property after the date of the appraisal, and it was structurally the same on March 6, 1962, although at that time it was occupied by renters rather than the condemnees, who had purchased a new home with the proceeds of the loan. The property was the same except that the housekeeping wasn't as good as it had been. He further testified that in appraising property, he had available a list of all sales in the city and kept himself informed. He knew of no sales in the area that would cause him to change his opinion of the value. It was his personal opinion that the property was worth $6,000. As we read the record, the witness was amply qualified, and his opinion was premised on the market value and condition of the property on March 6, 1962, the day of the taking. The burden was on condemnees to prove the market value as of March 6, 1962. King's testimony meets that test.

The State produced two value witnesses, who placed a market value on the property of $4,000 and $4,100. One checked the property in September 1961, or 2 months after the King appraisal. The other did not see the property until approximately 1 month after the con-

demnation. It is apparent that the State would apply different criteria to the condemnees' witness than it would to its own. The State's appraisers, to determine their values, relied mainly on the sales of other properties, all but one of which were made in 1959, 1960, or 1961. All were prior to the appraisal made by condemnees' witness. The one which was not made prior was a sale approximately 1 month after the date of the condemnation. We see no need to discuss this evidence, but do observe that differences involved in the size of the lots, the location, and improvements suggest the possibility that the jury could readily have determined that none of the properties used by the State's appraisers were actually comparable sales.

The market value of land taken by condemnation proceedings is computable as of the time of the condemnation, which is deemed to be the date the petition for condemnation is filed. Platte Valley Public Power & Irr. Dist. v. Armstrong, 159 Neb. 609, 68 N. W. 2d 200. This does not mean the witnesses must have examined the property on that exact day. This would very rarely be the case. Even the appraisers appointed by the county judge in condemnation proceedings appraise the property on a day subsequent to the day for which the value is to be determined. The rule is that the actual appraisal must be made near enough in point of time to furnish a test of the market value as of the date in question, and is a matter within the sound discretion of the trial court. The same rule applies to comparable sales. It will be an extremely rare occasion when the dates correspond. Whether or not evidence of a comparable sale is near enough in point of time to furnish a test of the present value is a matter within the sound discretion of the trial court. See Timmons v. School Dist., 173 Neb. 574, 114 N. W. 2d 386. The trial court did not abuse its discretion in overruling the State's objection to the testimony of Kenneth King.

The owner was permitted, over objection, to testify to

the purchase price of the property 11 years previous to the condemnation and as to the improvements he had made on it subsequent to the purchase. The State contends this evidence was too remote to have probative value and was an abuse of the trial court's discretion. On the record herein, we cannot say that this was an abuse of discretion. It is true one of the State's witnesses testified conditions had changed, but there is evidence otherwise. The other expert witness called by the State testified that one of the factors considered by an appraiser is the price paid for property, and that he had made inquiry as to the purchase price on this particular property. He further testified that another factor considered by appraisers was the improvements made, and that improvements would have an influence, particularly if they lent some value to the real estate.

Our law is well settled that an owner who has resided on and improved land, and testifies he knows its worth, is a competent witness on the question of value. See Chicago, R. I. & P. Ry. Co. v. Buel, 56 Neb. 205, 76 N. W. 571. An owner, by virtue of the ownership relation, is qualified to give his estimate of the value of such property. See Johnson v. City of Lincoln, 174 Neb. 837, 120 N. W. 2d 297.

The owner testified that he had an opinion as to the fair and reasonable market value of the property as of March 6, 1962, and that value was $6,500. On cross-examination he admitted that he took into consideration in arriving at his opinion what he paid for the property and the cost of the improvements made, exclusive of labor. The factors considered by an owner do not affect his qualifications, but may affect the credibility of his testimony. In condemnation actions, the weight and credibility of testimony of either lay or expert witnesses regarding the value of land taken is for the jury. Connor v. State, 175 Neb. 140, 120 N. W. 2d 916.

The effect of the State's contention is to say that an owner will only be permitted to testify as to value when

he has in mind all of the elements upon which an opinion of value may properly be predicated. This would require him to have the qualifications of an expert witness to testify as to the value of his own property. We do not understand the law to require that the owner meet this strict test. The matter of values is not generally considered as a subject exclusively for experts, and one who has a reasonable familiarity with the property in question is usually competent to testify. See Wahlgren v. Loup River Public Power Dist., 139 Neb. 489, 297 N. W. 833. This, as suggested heretofore, is a matter for the sound discretion of the trial court.

No complaint is made that the jury was not properly instructed on the measure of damages. It was specifically told that the measure of compensation would be the fair and reasonable value of the property on the date of its taking, March 6, 1962. It was also told that fair and reasonable market value meant its actual value, "that is, the fair value of the property if offered for sale upon the open market as between one who is ready and willing to sell but is not compelled to sell, and one who is ready, able and willing to buy but is not required to buy."

The State assigns as error the introduction of certain family photographs, contending that their purpose was to arouse the sympathy of the jury. The photographs do show various members of the family of the owners, who had seven children, but each of them also shows some portion of the exterior or interior of the premises as it existed at the time of the condemnation. At the time of the trial, the improvements had been removed and the area incorporated into the highway system. It was, therefore, impossible to have the jury personally inspect the premises. The witnesses for the State tended to depreciate the effect of the improvements made on the value of the property and to disparage the suitability of the property for residential purposes. One of the witnesses testified, "the maintenance was below typical." The State also introduced several photographs of claimed

comparable sales without establishing similarity of situations. While the questioned photographs differ from those produced by the State in that they also picture members of the family of the owners, the purpose of their production is the same. The photographs show a livable home with a well-decorated interior suitable for a family residence. We said in Omaha Southern Ry. Co. v. Beeson, 36 Neb. 361, 54 N. W. 557: "Where on a trial an inspection of the premises in question is proper, but impracticable or impossible, a photographic view thereof is admissible."

The photographs offered, while taken for family purposes, did have probative value. Any notations on the back of the photographs, upon proper request, could have been adequately concealed from the jury. The information embraced in the only notation of which complaint is made was already in evidence, and could not be considered prejudicial error. The trial court did not abuse its discretion in admitting the photographs. They are within the ambit of the rule announced in Anderson v. Evans, 164 Neb. 599, 83 N. W. 2d 59: "The possibility that the photographs might have a tendency to create sympathy in favor of one party should not render them inadmissible as proof of an issue on the trial."

For the reasons given in this opinion, the judgment of the trial court is affirmed.

AFFIRMED.

CARTER, J., dissenting.

The condemnee in this case was permitted to testify, over objection, to the purchase price of the property more than 11 years prior to the commencement of the condemnation proceeding. The majority opinion holds that "we cannot say that this was an abuse of discretion." I dissent from this holding.

In a case where the measure of recovery is the market value of the property taken, the price paid for the property is wholly immaterial. It has no relation whatever to the market price of the property on the date of the

taking. Can it be said that the purchase price is material where it was purchased for little or nothing at a tax sale? Or during an economic period when values were depressed? Or if the property was acquired by prescription or accretion? On the other hand, can it be said that the purchase price is material when it was purchased at an exorbitant price and, for one reason or another, had become a "white elephant"? Or where it had been purchased at a high price for a special purpose which did materialize? The answers to these questions are obvious. The purchase price has no relation whatever to the market value at a subsequent time and the evidence should have been excluded as incompetent, irrelevant, and immaterial.

In the early case of Dietrichs v. Lincoln & Northwestern R. R. Co., 12 Neb. 225, 10 N. W. 718, this court said: "The price at which the lots in question were sold, according to the record read by counsel for the railroad company, was ridiculously small in 1877, but had it been the fair value of the lots then, that fact would furnish no criterion of their value in 1880, and the admission in evidence—substantially of the record, showing that the whole of the real property in question was once sold for a dollar and a half, was only calculated to belittle, and cast ridicule upon the claim of the claimant, and shed no intelligent light upon the question being tried." The opinion further stated: "The price at which such lots were sold but a few years ago would not furnish the slightest evidence of their market value now."

In Omaha Southern Ry. Co. v. Todd, 39 Neb. 818, 58 N. W. 289, this court said: "On the trial of an appeal from an award made by commissioners appointed to assess the damages sustained by a land-owner by reason of the appropriation of a part of his land for railroad purposes, evidence as to what such land-owner paid for the land is incompetent." See, also, Hamilton v. Allen; 86 Neb. 401, 125 N. W. 610, 28 L. R. A. N. S. 723; Raapke & Katz Co. v. Schmoller & Mueller Piano Co., 82 Neb.

716, 118 N. W. 652; Chicago, R. I. & P. Ry. Co. v. Griffith, 44 Neb. 690, 62 N. W. 868.

The foregoing holdings have never been departed from by this court so far as I have been able to determine. Their reasoning is sound, and in my judgment they should be adhered to. The rule is supported by the following cases from other jurisdictions. Levinson v. Commonwealth, 395 Pa. 613, 151 A. 2d 453; Ringer v. Wilkin, 32 Idaho 330, 183 P. 986; Martell v. Hall Oil Co., 36 Wyo. 166, 253 P. 862, 255 P. 3; Stanton v. St. Michell, 130 Wash. 449, 227 P. 737; Thompson v. Boydstun, 189 Okl. 530, 118 P. 2d 236.

There is a second reason why the evidence is inadmissible. The evidence was clearly too remote in point of time. Even in those jurisdictions which permit evidence of purchase price to be shown, the rule is limited. It must, among other limitations, have occurred relevantly in point of time. 5 Nichols on Eminent Domain (3rd ed.), § 21.2, p. 410. See, also, Raapke & Katz Co. v. Schmoller & Mueller Piano Co., *supra*.

The evidence as to the price paid for the property by the condemnee more than 11 years prior to the taking was incompetent, irrelevant, and immaterial, and the objection made thereto should have been sustained. The majority opinion summarily disposes of the matter by the bland statement that "we cannot say that this was an abuse of discretion." I submit that the trial court is not invested with discretion to admit incompetent, irrelevant, and immaterial evidence. In all my experience I have never even heard a contention for such a rule. I quite agree that the amount of damages sustained by a landowner in a condemnation proceeding is peculiarly of local nature to be determined by a jury. It is important, however, that such determination be made from competent, relevant, and material evidence, otherwise the verdict may be improperly influenced by evidence, not material, relevant, or competent, that tends to create a bias or prejudice for or against one of

the parties. I submit that the trial court erred in failing to sustain the objections to the evidence as to the amount paid for the property more than 11 years previous to the taking, and that the disposition of the question in the majority opinion is incorrect and is offensive to fundamental rules of evidence.

BROWER, J., concurs in this dissent.