HOWARD L. WAHLGREN ET AL., APPELLEES, V. LOUP RIVER PUBLIC POWER DISTRICT, APPELLANT.

297 N. W. 833

FILED MAY 2, 1941. No. 31016.

*Francis P. Matthews, William P. Kelley, August Wagner* and *C. N. McElfresh,* for appellant.

*Robins & Yost, Gross & Crawford, Franklin L. Pierce* and *Phillip M. Wellman, contra.*

Heard before SIMMONS, C. J., ROSE, PAINE, MESSMORE and YEAGER, JJ., and CHAPPELL, District Judge.

YEAGER, J.

This is an action in eminent domain by the Loup River Public Power District, a Nebraska public power corporation, appellant, the purpose of which is to acquire right of way for the construction and maintenance of an electric transmission line in Douglas county across the lands of Howard L. Wahlgren, one of the appellees, and referred to as appellee herein.

The farm in question consists of 264.54 acres. The length of the farm is north and south and is approximately three-fourths of a mile, and its width is east and west. The north end is approximately one-half mile in width, which width extends southward for one-fourth mile. The width for the remaining one-half mile of the length is one-half mile plus 400 feet. A public road runs the full length of the farm, north and south, on a line one-fourth mile east of the west line. Another public road, extending east and west, and one-half mile north of the south end of the farm, separates that portion of the farm which is east of the north and south road already mentioned. The farm buildings are situated on the west side of the north and south road, and somewhat more than one-half mile from the south end of the farm. The right of way enters the farm from the west at a point 317 feet north of the south

line of the farm, extends generally in an easterly and westerly direction and passes out on the east side, 286 feet north of the south line. The area of that portion of the farm between the right of way and the south line is approximately 21½ acres. On the right of way were constructed four structures spaced about 600 feet apart. The structures are all alike. Each consists of two poles of about the length of 50 feet. The poles were set in the ground 14½ feet apart, and to a depth of about 8 feet. Near the top is a cross-arm from which are suspended insulators. By attachment to the insulators on the structures, three wires or conductors of electric current are extended the length of the right of way in question. The conductors have a carrying capacity of 115 KV of electric current. The minimum distance between the wires or conductors and the ground is about 26 feet.

The action was instituted in the county court of Douglas county, Nebraska, in which court an award for damages was made and from which award an appeal was taken to the district court. In the district court trial was had to a jury, resulting in verdict and judgment in favor of appellee for $10,580. The Loup River Public Power District has appealed from this judgment.

The only issue presented to the district court was the amount of damages sustained by the appellee because of the construction of the power line over his lands.

As grounds for reversal of the judgment of the district court the appellant has assigned numerous errors. The first six assignments of error may be dealt with together. In these assignments, appellant asserts that the trial court erroneously refused to allow five witnesses to testify as to the damage to appellee's land, on the ground that no foundation for their testimony as to damage had been laid. Taking the witnesses in the order of their appearance, we find that the record as to foundation reflects the following:

Patrick Hughes, a farmer, lives on an 87-acre farm 8 miles from Elk City, title to farm being in his wife. He has known the Wahlgren farm for 25, 30 or 40 years. In

the old days he had been over the land, and recently has seen it about once each year. He has heard of and talked about sales in that vicinity, and he had an opinion as to the value of the land immediately before and after the establishment of the right of way.

James A. McArdle has lived in Omaha for 35 years. He was born and raised in the vicinity of the Wahlgren land, is interested in 45 acres near there and is agent for the 45 acres, and formerly owned other property in the vicinity. He watches for land sales in the vicinity, and has known the Wahlgren land since he was a kid.

William Markman, a farmer, lives 8 miles east of Elk City, and owns 600 acres of land. He has lived there over 50 years, and has been acquainted with the Wahlgren land for over 50 years. He has been around there lots of times, knows the soil, saw the land lots of times, has talked about and is acquainted with real estate values in the vicinity.

F. E. Winegar lives in Omaha, has been in the real estate business for 35 years, and has been in Omaha for 3½ years. He is familiar with the Wahlgren land, has seen it several times in the past several years, has been around the various roads, has talked with real estate men and has heard of sales being made. He has never actually gone into the fields, but has seen practically the entire farm from the roads and has been by the farm perhaps 100 times.

Allen W. Jones lives in Omaha, and is a real estate man engaged in the business of handling farm lands and acreage. He was never actually out in the fields but could see the entire farm from the highways. He has known the farm for 47 years and went past it probably 20 times a year. He has been on all of the highways, has talked with real estate men about land values in the vicinity and has kept informed on such values.

The court refused to allow each of these witnesses to give his opinion as to the value of the land immediately before and after the appropriation. In each instance of refusal to allow witness to give an opinion, an offer in

due and regular form was made, to which offer objection was made and sustained by the court. Two other witnesses for appellant were allowed, on the basis of qualification laid by them, to give opinions as to the damage to the land of the appellee.

That this kind of evidence is proper and admissible, if based on proper qualification, is not questioned by either of the parties to this action. The correct rule as laid down by this court applicable in these circumstances is that, where persons are shown to be familiar with the particular land in question, they may be permitted as witnesses to testify as to the value of the tract immediately before and immediately after the appropriation. *Republican V. R. Co. v. Arnold*, 13 Neb. 485, 14 N. W. 478; *Blakeley v. Chicago, K. & N. R. Co.*, 25 Neb. 207, 40 N. W. 956; *Burlington & M. R. R. Co. v. White*, 28 Neb. 166, 44 N. W. 95; *Chicago, R. I. & P. Ry. Co. v. Buel*, 56 Neb. 205, 76 N. W. 571.

Did then the court err in refusing to allow the witnesses named, or some of them, to testify on the ground of lack of foundation laid for the testimony? That these witnesses, and each of them, showed a familiarity with the land in question can hardly be questioned. In addition some of the witnesses disclosed an experience in, and observation of real estate transactions. It is urged by the appellee that the matter of allowing witnesses in these circumstances was one resting in the sound discretion of the court. This is a correct statement of the rule, but where the discretion is abused such abuse of discretion will be ground for new trial. *James Poultry Co. v. City of Nebraska City*, 135 Neb. 787, 284 N. W. 273.

We think that on the basis of the qualifying testimony of these witnesses alone, independent of any other considerations, the court erred in excluding the testimony as to damage, but when we consider that appellee offered the same kind of testimony based on no better or higher qualification, which was admitted over objection as to foundation, it becomes very clear that this exclusion of testimony was highly prejudicial.

On behalf of appellee, on the question of damage to the land, the record discloses the following:

Albert F. Gericke, a farmer, lives in Dodge county. He has been past the Wahlgren farm and has known it for 15 or 20 years. He is a landowner and is familiar with land values.

Ernest Schmidt is a farmer living near Fremont. He has been acquainted with the Wahlgren farm for a good many years and knows the character of the soil, and knows the reasonable market value of farms in the locality.

Frank Middaugh, a farmer, lives 7 miles east of Fremont. He has seen and is acquainted with the Wahlgren farm, and has inquired into and knows land values in his vicinity.

H. F. Turner, a farmer, lives 1 mile west of Elk City, and has lived in the vicinity of the Wahlgren farm most of his life. He knows the character and quality of the soil and of the crops grown thereon.

J. Emmett McArdle, a farmer, lives about one-half mile from the Wahlgren farm. He knows the farm well.

Fred A. Bailey, a real estate man living in Omaha, inspected the Wahlgren land in 1932, and is acquainted with the farm. He has tried to keep posted on the values of farm lands.

Fred A. Skow, a real estate man living in Omaha, knows the Wahlgren farm and has been on it. He has attempted to keep posted on land values.

These 7 witnesses were permitted to give their opinions, over objection, as to the value of the land before and after the appropriation.

This comparison of the qualifying testimony of the witnesses on the two sides of the case as to damage, and the rejection on the one side of witnesses with demonstrated qualifications comparable to the qualifications of the witnesses on the other, makes patent the fact that the parties did not receive the impartial consideration necessary in the presentation of controversies to juries. In this connection it has been suggested by appellee that, if the court

did err in this respect, it was without prejudice to the appellant, since there were other witnesses who were allowed to testify as to damage on behalf of the appellant. We cannot indulge the suggestion, and on the other hand we do not hold that this case was determinable on the basis of mere number of witnesses, but appellant had the right to have all of the competent evidence of which it had availed itself submitted for consideration. The jury, whose province it was to harmonize the testimony as far as possible, and in case of conflict to decide as to the weight to be given the testimony of the various witnesses, had a right to consider it. *Blakeley v. Chicago, K. & N. R. Co., supra.* These witnesses should have been permitted to give their testimony on the question of damage.

The appellant contends that the damages allowed are excessive. As damages, the appellee is entitled to recover full compensation for the land actually taken, if any was taken, and for such damages to the residue of the land as are equivalent to the diminution in the value thereof. *Fremont, E. & M. V. R. Co. v. Meeker,* 28 Neb. 94, 44 N. W. 79; *Beckman v. Lincoln & N. W. R. Co.,* 85 Neb. 228, 122 N. W. 994; *McGinley v. Platte Valley Public Power and Irrigation District,* 133 Neb. 420, 275 N. W. 593; *Lilienthal v. Platte Valley Public Power and Irrigation District,* 134 Neb. 281, 278 N. W. 492.

In this case no property was actually appropriated for exclusive use by appellant except the areas upon which the structures were erected. Under these circumstances the only thing to be considered is damage to the land resulting from a restriction of the use. It necessarily follows that consideration must be limited to that portion of the farm whereon use has in fact been restricted.

We have already described the farm, its boundaries, the roads running through it, the location of farm buildings, the dimensions, and the location of the right of way. From this description and the evidence in this case, it becomes possible to determine with reasonable accuracy the area of the portion of the farm affected by the right of way. We

find from the evidence that about 21½ acres of appellee's land lies south of the right of way. In this area none of the farm structures is located, and no use is indicated except that of raising or producing crops. All of the farm buildings are approximately one-half mile away, and the entire remaining farm area is to the north of the right of way. Appellee in his testimony limits the convenient use of the land to a distance of 15 feet from the right of way. The evidence, however, indicated that use over a wider area was limited by potential danger from the current carried and to be carried over the electric lines. However, the maximum distance from the line to which potential danger extends is 50 feet according to the testimony of the engineers called by appellee. The area between the right of way and a line 50 feet to the north would be about 3½ acres. Thus it appears conclusively from the evidence that there is no direct limitation upon the use of appellee's farm except as to about 25 acres. No testimony indicates an indirect limitation except it is suggested that in the area in the vicinity of the right of way a place is left for the growth of noxious weeds which, if allowed to grow, would prevent the sale of seed produced as certified seed. Over what area and to what extent interference would take place from scattering of seeds from noxious weeds are not pointed out, nor is it pointed out clearly what kind of weed seeds would prevent the certification of corn for seed.

With this situation made clear and the rules for assessment of damages in mind, and this coupled with a record containing no competent evidence upon which to ground a conclusion that the remainder of the farm has been damaged directly or as a farming unit, we can find no theory which would permit the assessment of damages over an area other than that between the south line of the farm and a line not more than 50 feet north of the right of way. The only taking and the only interference with use are within that area, a total area of about 25 acres. Even if we consider that this entire acreage was taken and ap-

propriated, and placing upon it the value placed by appellee before the construction of the line which was $250 an acre, the damage would have been but $6,250, which would be $4,330 less than the amount allowed by the jury ($10,-580). But no one contends that the entire use of this area was destroyed, and no other witness places the value of the land before construction of the line in excess of $185 an acre.

In placing the most favorable construction on the evidence as to the value of the land taken by the defendant and the damages to the remaining portion of the land not taken resulting from the taking, we conclude that the verdict is clearly excessive. It is clear also that the jury were permitted to speculate on a theory of damage not supported by competent evidence.

In *Stull v. Department of Roads and Irrigation*, 129 Neb. 822, 263 N. W. 148, the court said: "Witnesses for both parties were permitted to testify without objection to the difference in value of the whole tract before and after the taking when, as a matter of fact, it should have been limited to the difference in value of the remainder of the land not taken before and after the taking for public use."

In *McGinley v. Platte Valley Public Power and Irrigation District*, 133 Neb. 420, 275 N. W. 593, in discussing this question, this court said:

"The jury were left free to find that all the land not taken was diminished a dollar in value on each acre, if the evidence so proved, though there was no proof that the summer pasture land in the sand-hills was of any less value for ranch purposes after the taking than it was before. There must be a limit to remote, unaffected lands that may be considered in estimating depreciation in their value by condemnation of contiguous lands taken for public purposes. * * *

"Where pasture lands, forming the principal acreage of a cattle ranch partly taken for a public purpose, will make the same contribution in value to the remainder after the taking as they previously contributed to the whole, they

should not be considered in estimating the fair and reasonable market value of the entire portion of the ranch not taken."

Appellant contends that the court erred in permitting appellee to testify to his personal fear of danger in carrying on farming operations in the vicinity of the structures and under the lines. This position, in the light of the evidence adduced, is well taken. This testimony of appellant deals simply with personal fear and is not connected with or an incident of his knowledge of present or potential danger. Fear as such cannot be made the basis upon which to predicate depreciation in market value of land. A fair statement seems to be that the only fear which may be considered as an element in fixing value is that of danger, the present or potential existence of which is grounded in authentic observation and experience, or in scientific investigation, and which fear circumscribes activity or limits freedom of use in the area of the present or potential danger.

In relation to fear this court has said: "Mere general fears from the presence of a transmission line cannot be made the basis upon which to predicate any depreciation in market value, for ill-defined fear that at some unknown time in the future some misfortune may come to man or beast by reason of the transmission line cannot enter into the consideration of those who are required to fix the amount of the damages." *Dunlap v. Loup River Public Power District*, 136 Neb. 11, 284 N. W. 742.

It is urged that there was error in allowing the appellee to give testimony relating to crops produced on the land in previous years, particularly in the years 1935 and 1936. The phase of this subject which related to the quantity and quality of crop production for the year in which condemnation took place, and for previous years, was clearly admissible. It all went to the question of the productive quality of the soil, and productivity of soil is one of the primary elements to be considered in the determination of farm land values. Anything connected with the land that

would influence the market value of the land in the mind of a good faith intending purchaser would be an element for consideration in determining damage. *Chicago, B. & Q. R. Co. v. O'Connor,* 42 Neb. 90, 60 N. W. 326; *Chicago, R. I. & P. Ry. Co. v. O'Neill,* 58 Neb. 239, 78 N. W. 521; *Kayser v. Chicago, B. & Q. R. Co.,* 88 Neb. 343, 129 N. W. 554.

However, the prices received for crops produced must be considered in an entirely different light. In the case of *Wiles v. Department of Public Works,* 120 Neb. 689, 234 N. W. 918, this court said: "The compensation for land taken by right of eminent domain is measured by its market value at the time taken, and no evidence is admissible of its peculiar value for special reasons to its owner." This statement was quoted with approval in *In re Platte Valley Public Power and Irrigation District,* 137 Neb. 313, 289 N. W. 383. The prices received for certified seeds represent a peculiar value to the owner based on special reasons as may clearly be seen. The price of farm products is dependent upon many uncertainties, such as supply and demand, seasonal fluctuations, availability of markets and wisdom in marketing. To permit a jury to consider the prices of farm products in the determination of damages in eminent domain actions cannot be approved. Such evidence is too speculative to be of any real value and it was erroneously received.

Since this case must be reversed and remanded for a new trial, it becomes unnecessary to discuss the remaining assignments of error. They deal for the most part with rulings on evidence during the trial, and in the light of this opinion are not likely to be presented in the same manner when the case is again tried.

For the reasons herein set forth, the judgment is reversed and cause remanded for a new trial.

REVERSED.