IN RE APPLICATION OF PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT.
PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT, A PUBLIC CORPORATION, APPELLANT, V. ALVIN A. ARMSTRONG ET AL., APPELLEES.

68 N. W. 2d 200

Filed January 21, 1955. No. 33582.

*Crosby & Crosby* and *Jess C. Nielsen,* for appellant.

*E. H. Evans* and *McGinley, Lane, Powers & McGinley,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Platte Valley Public Power and Irrigation District, filed its petition in the county court on July 28, 1952, to condemn a necessary right-of-way for the construction, operation, and maintenance of a dike along the south 300 feet of Lot 9, located in the west half of the southeast quarter of Section 6, Township 13 North, Range 36 West of the 6th P. M., in Keith County, Nebraska. The land actually taken was 9.1 acres of tillable land and 24 acres of accretion or riparian land directly south thereof, which was non-tillable and partially covered with trees, brush, bunch grass or clover, and had a frontage of about 792 feet along the South

Platte River. Such 33.1 acres so taken was the southern-most portion of Lot 9 which theretofore consisted of about 67.8 acres, all lying south of and extending along U. S. Highway No. 30 and the Union Pacific Railroad double track rights-of-way. Lot 9 will be hereinafter called the south tract. It originally consisted of 48.87 more acres adjacent thereto on the east and extending along such rights-of-way, but plaintiff had previously appropriated that portion thereof. The time when that was done does not appear in this record. The rights-of-way aforesaid were fenced in but there were private gates into private roads across them which were at times claimed to have been used by defendants. However, by what legal right they so crossed the Union Pacific right-of-way is not in any manner shown.

North of such rights-of-way is a tract of 178 acres of land located in the east half of said Section 6. Such land will be hereinafter called the north tract. Sixty-eight acres thereof lying north of and extending along such rights-of-way were in cultivation. However, the remaining 110 acres were non-tillable rough pasture land lying entirely north of such cultivated 68 acres.

Defendants Alvin A. Armstrong and Fred A. Armstrong, hereinafter designated by name or as defendants Armstrong, have owned all the land aforesaid as tenants in common since their father's death in 1951. There are no improvements upon the land except some not too well-defined fences, an old boxcar used as a hunting shack, and a well. However, the boxcar and well are located on the north tract.

Defendant Darrell Thalken, hereinafter designated by name or as defendant Thalken, was a tenant in possession of all the land under a written lease with defendants Armstrong from March 1, 1952, to March 1, 1957, which was allegedly executed in good faith, without knowledge of the contemplated condemnation. The record in that regard discloses that the lease was negotiated in the fall of 1951 when Thalken was orally permitted to enter

and do some farm work upon the north tract. Thalken actually lived several miles west of the land, but the lease aforesaid not only included the land here involved but also superseded a lease theretofore made by Thalken with the father of defendants Armstrong on other described lands formerly owned by him but located some distance west. The lease provided that Thalken would pay as rent one-third of all grain crops delivered, but defendants Armstrong were to supply grass or hay seed and nurse crop, and receive one-half of the seed and hay crops. Thalken was to pay $500 annual cash rent for 489 acres of pasture land, which, contrary to plaintiff's contention, clearly included the 110 acres of pasture land heretofore described in the north tract.

Defendant Clifford Wills, hereinafter designated by name or as defendant Wills, held a 10-year written hunting and fishing lease on all the land involved, which was allegedly entered into with defendants Armstrong on July 10, 1952, just 18 days prior to the filing of plaintiff's application to condemn, without any prior notice or knowledge that such privileges would also be condemned by plaintiff.

Appraisers were duly appointed and qualified, who on August 13, 1952, filed their findings and award respectively assessing the damages as follows: To defendants Armstrong as owners of the land taken and appropriated, $3,125; to defendant Thalken, as tenant in possession, $1,000; and to defendant Wills, lessee of hunting and fishing privileges, $200.

Therefrom plaintiff appealed to the district court, giving notice thereof on September 5, 1952. However, pending such appeal and subject thereto, plaintiff deposited the total award of $4,325 with the county judge on September 13, 1952, took possession of the land condemned, and proceeded to construct the dike thereon. Plaintiff's petition on appeal was not filed in the district court within the time required by statute, but over objection of defendants such petition was subsequently

permitted to be filed instanter by the district court and that issue is not now before the court since defendants did not cross-appeal. Parts of plaintiff's original petition on appeal were stricken in conformity with joint motions of defendants, and plaintiff subsequently filed an amended petition.

Plaintiff's amended petition alleged generally its capacity as a public corporation, and the necessity for condemnation of the described and platted lands actually taken for construction of a dike thereon. It set forth that defendants Armstrong were owners of such land as tenants in common; that defendant Thalken was a tenant in possession of the premises under a written lease; and that defendant Wills claimed to be the owner of a hunting lease thereon. It prayed for a full determination of damages actually sustained by defendants as their respective interests and the law might require with judgment accordingly against plaintiff.

Thereto defendants severally filed answers admitting capacity of plaintiff to condemn, the necessity thereof, and the extent of the land actually taken. In addition, defendants severally filed cross-petitions setting forth the damages claimed for their interests actually taken and rights and interests allegedly included therein. In that regard, so far as important here, defendants Armstrong sought to recover not only the fair and reasonable market value of the land actually taken but also damages allegedly caused thereby and resulting from diminution in the fair and reasonable market value of all the remaining lands in both the north and south tracts, upon the theory that they were one contiguous and continuous tract or unit used together for the common purpose of farming and stock raising. Likewise, defendants Thalken and Wills in their cross-petitions set forth their respective leases and upon comparable theories each sought to recover damages to their respective leasehold interests for the remainder of their terms. Defendant Thalken also claimed damages for the

destruction of unmatured crops on the 9.1 acres planted on August 31, 1952, but such issue was not submitted to the jury and no cross-appeal was taken.

To defendants' answers, plaintiff filed replies in the nature of general denials, and to defendants' cross-petitions, plaintiff filed answers denying generally, denying that the two tracts aforesaid were one contiguous and continuous tract or unit used together for a common purpose, and denying that the land remaining in the north tract or the leases thereon were damaged or depreciated in any manner by the taking from the south tract. It prayed for a full determination of damages sustained by defendants and their respective interests by reason of the taking and the diminution in value, if any, of the land remaining in the south tract, which consisted of 34.7 tillable acres bounded on the north by the rights-of-way.

Thereafter the cause was tried and submitted to a jury which was permitted by stipulation to view the premises. In that connection, the rule is that where a jury is permitted to view the premises involved in eminent domain litigation, the result of its observations is evidence which in arriving at a verdict it may consider only in connection with other competent evidence adduced. Stull v. Department of Roads & Irrigation, 129 Neb. 822, 263 N. W. 148.

Subsequently a verdict was returned in favor of defendants Armstrong, the effect of which was to find that the fair and reasonable market value of the 9.1 acres taken on September 13, 1952, was $1,137.50; that the fair and reasonable market value of the 24 acres then taken was $900; and that the entire remainder of their land was then damaged $2,250 by the taking of said 33.1 acres from the south tract. It was found that defendant Thalken was damaged $2,000 and defendant Wills was damaged $175 by such taking. Plaintiff's motion for new trial was subsequently overruled and judgments were accordingly rendered upon the verdict

in favor of defendants Armstrong for $4,287.50, and in favor of defendant Thalken for $2,000, with interest on each such amount respectively at 6 percent from September 13, 1952, together with costs; and in favor of defendant lessee Wills for $175.

Therefrom plaintiff appealed, assigning and arguing substantially: (1) That the trial court erred in the admission and exclusion of evidence; (2) that the trial court erred in the giving and failing to give instructions; and (3) that the verdict and judgments rendered thereon were speculative and not sustained by competent evidence. We sustain the assignments.

It will be recalled that plaintiff's condemnation petition was filed in the county court on July 28, 1952. Plaintiff argued that nevertheless defendants were erroneously permitted to adduce evidence attempting to fix the market value of the land taken and alleged damages for severance as of September 13, 1952, the date when the award was deposited with the county judge by plaintiff. Further, in that connection plaintiff argued that instructions given by the trial court erroneously directed the jury to fix such market values and damages as of September 13, 1952. It has long been a general rule in this jurisdiction, unchanged by Chapter 76, article 7, R. S. Supp., 1953, that the market value of lands taken by eminent domain proceedings, together with damages, if any, to other remaining lands by severance, are computable as of the time of the taking, which is deemed to occur when the petition for condemnation is filed. In this case, such time was July 28, 1952. Missouri Pacific Ry. Co. v. Hays, 15 Neb. 224, 18 N. W. 51; Fremont, E. & M. V. R. R. Co. v. Bates, 40 Neb. 381, 58 N. W. 959; Stuhr v. City of Grand Island, 124 Neb. 285, 246 N. W. 461; In re Platte Valley Public Power & Irr. Dist., 137 Neb. 313, 289 N. W. 383. Viewed in such light, plaintiff's contentions have merit. However, the record in this case as made by all parties clearly discloses that such claimed market value or damages did not fluctu-

ate, but rather would be the same during July, August, and September. Therefore, the admission of such evidence and direction to the jury, while erroneous, was without prejudice to plaintiff. In a comparable situation this court so, held in Northeastern Nebraska R. R. Co. v. Frazier, 25 Neb. 53, 40 N. W. 609, without departing from the general rule heretofore stated.

However, in order to fully complete such general rule it should be borne in mind that Article I, section 21, Constitution of Nebraska, provides: "The property of no person shall be *taken or damaged* for public use without just compensation therefor." (Italics supplied.) The words "or damaged" in said section have been held to include all actual damages resulting from the exercise of the right of eminent domain which diminishes the market value of private property. Robinson v. Central Nebraska Public Power & Irr. Dist., 146 Neb. 534, 20 N. W. 2d 509. In such case we have also said in effect that under appropriate circumstances and conditions a tenant could recover damages to his unmatured crops then growing on the land and damaged by the taking, as well as damages to his leasehold estate then existent. See, also, 20 C. J., Eminent Domain, § 245, p. 798; 29 C. J. S., Eminent Domain, § 173, p. 1042.

In that connection, section 76-711, R. S. Supp., 1953, provides, insofar as important here: "The condemner shall not acquire any interest in or right to possession of the property condemned until he has deposited with the county judge for the use of the condemnee the amount of the condemnation award in effect at the time the deposit is made. If no appeal is taken by the condemner from the award of appraisers, the condemner will be deemed to have accepted the award unless he has within sixty days from the date of the award filed an election in writing to abandon the proceeding. If the proceeding is abandoned, proceedings may not again be instituted by the condemner to condemn the property within two years from the date of abandonment."

In the light of the foregoing, it is logical to conclude, as we do, that an owner or tenant in possession of a farm who at the proper time, in due course of good husbandry and in good faith, plants a crop on the land after the petition for condemnation is filed but before condemner has deposited the award with the county judge or before condemner has by some binding election accepted the award, and such crop is growing but unmatured at the time of such deposit or election, may as of that time ordinarily recover damages for injury to or destruction of his share of the value of such crop in its then condition. 18 Am. Jur., Eminent Domain, § 256, p. 896. However, condemnee must establish the foregoing conditions by a preponderance of competent evidence which also meets the requirements as to measure of damages and sufficiency and clarity of proof to take it out of the realm of speculation for the purpose of submission to a jury within the meaning of relevant rules announced in Gledhill v. State, 123 Neb. 726, 243 N. W. 909; Snyder v. Platte Valley Public Power & Irr. Dist., 144 Neb. 308, 13 N. W. 2d 160, 160 A. L. R. 1154; Faught v. Platte Valley Public Power & Irr. Dist., 147 Neb. 1032, 25 N. W. 2d 889; Ricenbaw v. Kraus, 157 Neb. 723, 61 N. W. 2d 350.

Further, in State v. Platte Valley Public Power & Irr. Dist., 147 Neb. 289, 23 N. W. 2d 300, 166 A. L. R. 1196, this court held that: "If a leasehold interest is taken, or injured, the lessee is entitled to a sum which will restore the money loss consequent to the taking or injury. This consists generally of the fair market value of the leasehold or unexpired term of the lease, and is said to be the difference between the rental value of the remainder of the term and the rent reserved in the lease.

"Where the rent reserved equals or exceeds the rental value, the lessee has suffered no loss and cannot recover."

In that connection, defendant Thalken was erroneously

permitted, over objection by plaintiff, to testify as a mere conclusion that for abstract reasons, the taking damaged his lease $2,000, the exact amount which the jury permitted him to recover. We find no competent evidence in this record from which either a court or jury could have intelligently determined the fair market value of such defendant's leasehold for the unexpired term or the amount of rent actually reserved in the lease by which they could have intelligently arrived at the difference between them. Further, the instructions given by the trial court failed to fully, clearly, and intelligently state the applicable rule. In Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643, we held: "A jury should be fully and fairly informed as to the various items of damages which it should take into consideration in arriving at its verdict. In this respect it is the duty of the trial court to instruct as to the proper basis upon which damages are to be assessed for each such item." See, also, Benedict v. Eppley Hotel Co., *ante* p. 23, 65 N. W. 2d 224. Thus, the jury was erroneously misled and permitted to speculate with regard to the damages allegedly sustained by defendant Thalken, and in that respect the verdict and judgment rendered thereon were not supported by competent evidence.

Defendants offered and the trial court admitted several photographs graphically depicting the topography of the land involved and its apparent tillability, particularly that land in the south tract adjacent to the rights-of-way upon which were several shocks of hay or grain. Defendants admitted, however, that such land had been flooded in 1929 and again in 1948. In that connection, after proper foundation was laid, plaintiff offered and the trial court refused to admit in evidence photographs, exhibits Nos. 7, 8, 9, 10, 11, 12, and 13, which graphically portrayed the complete flooding and inundation of such land in 1949. Plaintiff argued first that the exclusion was erroneous because such evidence was admissible as bearing upon the fair market value of the land.

We sustain that contention. In Wahlgren v. Loup River Public Power Dist., 139 Neb. 489, 297 N. W. 833, we held: "A party to an action in condemnation has a right to have all of the competent evidence of which he has availed himself on the question of damages submitted to a jury for consideration, and a failure of the trial court to allow its submission is reversible error." See, also, 29 C. J. S., Eminent Domain, § 273, p. 1260; 30 C. J. S., Eminent Domain, § 431, p. 164. That rule has application here.

On the other hand, plaintiff argued that such exhibits should have been admitted to establish that construction and maintenance of the dike by plaintiff operated as a special benefit. That contention has no merit. The general rule is that the burden of showing the damages which the landowner or lessee will suffer rests on him while the burden is on petitioner to show matters which tend to reduce or mitigate the damages. Rath v. Sanitary District No. One, 156 Neb. 444, 56 N. W. 2d 741. Further, we have held that condemnation is a special statutory proceeding and on appeal to the district court from an appraisement of damages in eminent domain cases, if other issues than the question of damages are involved, they must be presented by proper pleadings. Webber v. City of Scottsbluff, 155 Neb. 48, 50 N. W. 2d 533; Higgins v. Loup River Public Power Dist., 157 Neb. 652, 61 N. W. 2d 213. We have held that the proof must be confined to the issues made by the pleadings, and the charge to the jury must be confined to the issues made by the pleadings and supported by evidence. Perrine v. Hokser, 158 Neb. 190, 62 N. W. 2d 677; State v. County of Cheyenne, 157 Neb. 533, 60 N. W. 2d 593. By analogy, if on appeal to the district court a condemner claims special benefits, such issue must be appropriately pleaded and supported by competent evidence. In the case at bar, plaintiff neither pleaded nor offered any competent evidence as required from which it could be concluded that the dike operated as a special benefit.

See, Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168.

The force and effect of instructions Nos. 10 and 13 given by the trial court was to direct the jury as a matter of law that the north and south tracts were one contiguous and continuous tract or unit used for a common purpose, and also that as a matter of fact defendants were entitled to recover damages in some amount to be determined by the jury to the entire remainder thereof by reason of severance of the 33.1 acres taken by plaintiff from the southern portion of the south tract. Plaintiff concedes as a matter of law and fact that defendants were entitled to severance damages in some amount determinable by the jury to the land remaining in the south tract, but denies that such tract and the north tract were one contiguous and continuous tract or unit, and cites McGinley v. Platte Valley Public Power & Irr. Dist., 133 Neb. 420, 275 N. W. 593, claiming that the north tract made the same contribution in the same manner after the taking as before, and was not damaged in any manner or amount by the taking from the southern portion of the south tract. In 29 C. J. S., § 140, p. 982, it is said: "To constitute a unity of property within the rule, there must be such a connection or relation of adaptation, convenience, and actual and permanent use as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcels left, in the most advantageous and profitable manner in the business for which they are used. If the separate tracts of which a part of one is taken are not put to a joint use, they cannot be considered as one parcel in assessing damages to the land not taken, and this is especially true where the tracts are separated by a street, or a watercourse."

As recently as Rath v. Sanitary District No. One, *supra,* this court held: "One contiguous tract or unit is that which in general belongs to the same proprietor as that taken, and is continuous with it and used together for

a common purpose, whether or not the same is separated by platted or existing lines, lots, blocks, streets, alleys, or like divisions.

"Ordinarily in a condemnation proceeding it is a question of law whether or not the property involved constitutes one contiguous unit or tract, but where the doubt is factual, depending on conflicting evidence or on different views of the evidence, the court should submit the question to the jury under proper instructions.

"Where the property involved is one contiguous tract or unit, in estimating the damages occasioned by the appropriation of a part thereof for public use, the injury to the property remaining as well as the market value of the property actually taken should be considered, although the petition filed by the condemner for the appointment of appraisers only describes the property taken.

"The measure of damages for land taken for public use in such cases is the fair and reasonable market value of the land actually appropriated and the difference in the fair and reasonable market value of the remainder of the land before and after the taking."

We do find competent evidence in this record from which it could be reasonably concluded that the tracts north and south of the rights-of-way were one tract or unit used together for a common purpose. However, they were designated by name and description as separate tracts; and they were not physically contiguous because actually separated by both U. S. Highway No. 30 and the double track Union Pacific rights-of-way over which defendants testified that they crossed through a private gateway road. However, we find no evidence that they had any legal right to so cross the Union Pacific right-of-way. We find that not only defendants' direct examination but also their cross-examination and the testimony of other witnesses as well leaves a factual doubt depending upon conflicting evidence or different views of the evidence, whether or not

the two tracts were one contiguous tract or unit as heretofore defined. To set forth such evidence at length would not serve any purpose except to unduly prolong this opinion. It is sufficient for us to say that as in Rath v. Sanitary District No. One, *supra*, that question was one for determination by the jury under proper instructions, and a failure to so submit it herein was prejudicial error. See, also, Paulson v. State Highway Commission, 210 Iowa 651, 231 N. W. 296; Annotation, 6 A. L. R. 2d, § 13, p. 1222.

On the other hand, defendants adduced competent evidence from which it could have been reasonably concluded that plaintiff's taking from the south tract caused a diminution in value of the land remaining in the north tract, but plaintiff also adduced competent evidence from which it could have been reasonably concluded that there were no damages thereto caused by the taking. Therefore, the question of whether or not such lands remaining in the north tract were damaged and the amount thereof if any, as well as the amount of damages to land remaining in the south tract, were also separate questions for the jury, and when the trial court assumed as a fact by its instructions that there were damages to both and that defendants were entitled to recover same in some amount, that also was prejudicial error.

As held in McKain v. Platte Valley Public Power & Irr. Dist., 151 Neb. 497, 37 N. W. 2d 923: "It is the duty of the trial court, without request, to instruct the jury on each issue presented by the pleadings and supported by evidence.

"A litigant is entitled to have the jury instructed as to his theory of the case as shown by pleading and evidence, and a failure to do so is prejudicial error."

Also, in Langdon v. Loup River Public Power Dist., *supra*, this court held: "The purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict; and, with this end in view, it should state clearly and con-

cisely the issues of fact and the principles of law which are necessary to enable them to accomplish the purpose desired."

Other questions were presented and argued in briefs of counsel, but as we view it they require no discussion.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is reversed and the cause is remanded for further proceedings in conformity with this opinion.

REVERSED AND REMANDED.