LEONARD CHALOUPKA ET AL., APPELLEES, V. STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLANT.

127 N. W. 2d 291

Filed April 3, 1964. No. 35615.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, Warren D. Lichty, Jr., Lyle C. Winkle, Richard L. Dunning, and W. L. Strong, for appellant.

Clarence C. Kunc, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is a condemnation action involving the taking of 1.95 acres of land in a strip 18.5 feet wide or less, for approximately 1 mile along the west side of the northeast quarter of Section 15 and the southeast quarter of Section 10, all in Township 6 North, Range 4 East of the 6th P. M., in Saline County, Nebraska. The purpose of the taking was to reconstruct State Highway No. 82 between Wilber and Crete by widening the highway and converting it from an oil mat to an 8-inch concrete pavement.

The property is owned by Leonard Chaloupka who with his wife are the plaintiffs herein. For convenience hereinafter Leonard Chaloupka will be referred to as owner. The property is being condemned by the State of Nebraska, Department of Roads, who for convenience hereinafter will be referred to as State.

The property involved is on the east side of Highway No. 82 and on the north edge of the city of Wilber,

Nebraska. The owner lives on the southwest corner of the property, in an area which in the 1930s was platted as Chaloupka Addition, and annexed to the city of Wilber. Chaloupka Addition consists of Lots 1 to 6, which are 44 feet wide, and Lot 7, which is 36 feet wide. The lots vary in depth from 122.8 feet for Lot 1 to 133.8 feet for Lot 7. Adjoining this addition on the east is a railroad right-of-way of 100 feet, which runs generally north and south across the owner's farm. The west boundary line of the railroad is the east boundary line of the addition. There is a strip 17 feet wide between Highway No. 82 and the west boundary line of Chaloupka Addition. For some reason which does not appear, at the time of the platting this was the property of the owner but was not included in the addition and was not a part of the highway right-of-way. The west boundary of Chaloupka Addition, therefore, was located 17 feet east of Highway No. 82. The State included this 17-foot strip in the condemnation and stipulated that it was the property of the owner. So actually, with this 17-foot strip, only the west 1.5 feet of Chaloupka Addition is included in the taking.

The owner's buildings are on Lots 1, 2, and 3. A shelter belt is growing on Lot 4, and Lots 5, 6, and 7 are farmed in connection with the balance of the owner's land. There is a building in the southwest corner of Lot 1, which previous to 1945 was used as a filling station and subsequently for about a year and a half as a feed store. For at least the last 15 years, this building has been vacant. The new right-of-way is approximately 2½ feet west of this building. The 17-foot strip of land, which is 4 feet west of the building, had been used as a driveway for the station, and in later years had on occasions been used as a parking area by the Chaloupkas and their visitors. Immediately east of the filling station, the Chaloupkas have a two-car garage. Access to this garage and to the owner's home, which is located on Lots 2 and 3, is provided by a drive-

way to an east-and-west street bounding Lot 1 on the south. The owner's residence, which faces to the west, is a story-and-a-half house. In front of the residence, or to the west, there was a hedge of shrubbery as well as some evergreen and elm trees. Part of this shrubbery and the evergreen and elm trees were included in the taking and were removed by the State.

Highway No. 82, for a portion of the taking, is to be a controlled-access highway. Included in this portion is the 300-foot strip along Chaloupka Addition, as well as the area to the north of it for 1,913.2 feet, which embraces approximately 6.5 acres between the highway and the railroad. The owner, except for the parking area and the driveway used by the filling station referred to heretofore, was provided, at state expense, with the same means of ingress and egress which were used previous to the condemnation. It is the contention of the owner that Lots 4, 5, 6, and 7 are residential lots and their value as such is destroyed by a controlled-access road. The owner further contends that the 6.5-acre tract to the north of Chaloupka Addition is suitable for industrial or commercial purposes. It is the contention of the State that both tracts are agricultural land, which is its present use, and no other use can be anticipated in the foreseeable future. The property in Chaloupka Addition is connected to sewer, water, and gas lines serving the city of Wilber, and an electric line of the city of Wilber runs along the west boundary of all the property to which access is controlled. The only access provided for the 6.5-acre tract is a field entrance from Highway No. 82 of some 22 to 24 feet, which is the same driveway which served this area before the condemnation.

The county court appraisers fixed the owner's damage at $1,085. The owner appealed to the district court where the jury, which was permitted to view the property, returned a verdict for $1,170. The owner filed a motion for a new trial. The trial court sustained the motion and in the alternative granted an additur of

$2,000 if the State complied within 15 days. Upon the State's failure to comply with the additur, the verdict was set aside and a new trial granted. The State has perfected its appeal to this court.

The reasons assigned by the trial court for its action were as follows: "That the verdict entered herein is contrary to the evidence;

"That the evidence of the defendant was that the value of the property taken was the sum of $1,054 and $1,104, respectively, and that neither of said sums included any amount for reduction in value to the remainder of plaintiff's property;

"That the verdict of the jury fails to reflect any compensation for loss of access to a portion of plaintiff's property in that the evidence adduced by the defendant was that defendant's witnesses took into account no amount as damage for loss of access to a portion of the plaintiff's property;

"That according to the evidence of the plaintiff a reduction in value resulting to the balance of plaintiff's property on account of taking of said land by the defendant and the taking of the right of access thereto is at least $2,000."

The state has alleged 10 assignments of error. They are directed to the right of the trial court on the record herein to sustain the motion for a new trial. We see no need to list or discuss the individual assignments.

In Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772, we said: "The district court has the power and is required to consider and determine motions for a new trial by the exercise of its judicial discretion. The word 'discretion' is one of variable meanings depending on its use. In Tingley v. Dolby, supra, we quoted with approval this definition by Lord Mansfield: 'Discretion when applied to a court of justice means sound discretion guided by law. It must be governed by rule, not by humor; it must not be arbitrary, vague, and fanciful, but legal and regular.' As used in the

connection here presented it means that the court in its ruling must be guided and governed by applicable law. It means the application of statutes and legal principles to all of the facts of a case. * * *

"Where a party has sustained the burden and expense of a trial and has succeeded in securing the judgment of a jury on the facts in issue, he has a right to keep the benefit of that verdict unless there is prejudicial error in the proceedings by which it was secured."

In passing upon the questions raised by the sustaining of the motion for a new trial by the trial court, we must test the sufficiency of the evidence to support the verdict of the jury in the light most favorable to the State. As we said in Enterprise Co., Inc. v. Sanitary Dist. No. One, *ante* p. 271, 125 N. W. 2d 712: "In testing the sufficiency of the evidence to support a judgment, the evidence must be considered in the light most favorable to the the successful party." This means that every controverted fact must be resolved in the State's favor and it should have the benefit of every inference that can reasonably be deduced therefrom. See Smith v. Platte Valley Public Power & Irr. Dist., 151 Neb. 49, 36 N. W. 2d 478.

The State produced two valuation witnesses. Both of them were residents of Saline County and were licensed brokers dealing in Saline County real estate. Both of them testified that they gave consideration to control of access to the owner's property but considered the fact that the same means of ingress and egress existed after the condemnation as before. The owner argues that this did not correctly reflect the actual situation in that he lost the use of the 17-foot strip west of the filling station building which had been used for a driveway and for occasional parking. He also contends that even though he needed a permit for further access, it was possible to get it before the condemnation whereas it would be almost impossible to do so after access was condemned. This conflict and the owner's theory on loss of access

was fully presented to the jury. The State's witnesses rejected the probability of any residential development in the foreseeable future as well as any idea that the land had increased in value because of a commercial or an industrial potential. In support of their views, they testified that the population had remained fairly static and there had been no commercial or industrial development in Wilber for many years.

One of the State's valuation witnesses fixed the owner's damage at $1,054. This he broke down as follows: $424 for the 1.95 acres actually taken; $380 for damages to a fenced area, involving the replacement of the fence; and $250 for the damage to the residential area, including the shrubs and trees. The other State valuation witness fixed the owner's damage at $1,104, which he broke down as follows: $422 for the 1.95 acres actually taken; $382 for the damage to the fenced area, including the replacement of the fence; and $300 for the loss of the driveway and parking area and for the damage to the residential area because of the removal of shrubs and trees.

The owner, in addition to himself and his son, produced several local witnesses, including a real estate broker, a contractor, and two bankers, as well as a real estate broker from Lincoln. The valuation fixed by these witnesses for the 1.95 acres actually taken ranged from $600 to $2,083. The range of the damages fixed to the remainder of the property was from $3,287 to $9,300.

The witnesses for the owner and for the State differed widely on the question of the value of the land taken, as well as on the damages sustained by the remainder of the owner's property. It will serve no useful purpose to detail the conflict in the evidence. We have already suggested its area and extent.

The State's valuation witnesses were cross-examined extensively on the owner's theory of damages. The owner suggests that this cross-examination discloses a lack of qualification in the State's witnesses to testify

as to the fair market value of the owner's land and the purposes for which it was adaptable for use. While the witnesses had not checked certain elements the owner thought should have been considered, this went to their credibility and not to their qualifications. At best the cross-examination emphasized the difference in opinion and the factors the owner felt should be considered.

Without setting out the specific qualifications of the various witnesses, there is no question but that the State's witnesses were qualified as valuation witnesses and their testimony was relevant to the issue. In Evans v. State, *ante* p. 156, 125 N. W. 2d 541, we held: "It is not essential that every witness qualified to express his opinion as to the value of real estate shall have all-inclusive information of every detail of the factors entering into market value.

"The opinion of a witness as to the value of land will ordinarily be received if he is familiar with the property and its uses and is informed as to the state of the market, the weight and credibility of his evidence being for the jury." The owner's theory on damages was fully covered in his cross-examination of the State's witnesses as well as in the testimony of his own witnesses.

The measure of damages for land taken for public use is computable as of the time of the taking, which is deemed to occur when the petition for condemnation is filed. The proper measure of damages is the fair and reasonable market value of the land actually appropriated and the difference in the fair and reasonable market value of the remainder of the land before and after the taking. Platte Valley Public Power & Irr. Dist. v. Armstrong, 159 Neb. 609, 68 N. W. 2d 200. The burden of proving the extent of the damages in a condemnation action is not on the condemner but on the owner. The burden to show matters which tend to reduce or mitigate damages is on the condemner. Twenty Club v. State, 167 Neb. 37, 91 N. W. 2d 64.

The question of remainder damage, which includes the

loss of access, is a jury question. Damages in a condemnation action are peculiarly of a local nature and weight and credibility of valuation testimony is for the jury. State v. Wixson, 175 Neb. 431, 122 N. W. 2d 72. The testimony of the State's witnesses was directed to minimizing remainder damage. On the other hand, the jury could have felt that the testimony of the owner's witnesses grossly exaggerated such damage. The rule is too-well established for discussion that when evidence is in conflict, and is such that reasonable minds can draw different conclusions from it, a jury question is presented. See Smith v. Platte Valley Public Power & Irr. Dist., 151 Neb. 49, 36 N. W. 2d 478.

Essentially, the problem herein is one of the credibility of the witnesses and the weight to be given to their testimony. This is solely a matter for the jury. We may not agree with the conclusion reached, but where there is any evidence to support a jury's verdict, it is not the court's function to weigh the evidence to determine whether it would have returned a different verdict. See Stohlman v. Davis, 117 Neb. 178, 220 N. W. 247, 60 A. L. R. 658.

The question of control of access was one of the contested issues on which the owner's witnesses concentrated. It was the State's position that previous to the condemnation the owner could not change or enlarge his access to Highway No. 82 without the permission of the State, and that the right to require a permit included a right to refuse it. Section 39-1332, R. R. S. 1943, which was controlling, provides as follows: "No person shall construct, use, or permit to be used on property owned or occupied by such person any private entrance or exit, approach road, facility, thing, or appurtenance upon or connected to a highway right-of-way without first obtaining a written permit from the department; Provided, the owner or occupier of property shall not be required to obtain a permit to use or permit to be used in its existing condition any such private entrance

or exit, approach road, facility, thing, or appurtenance existing on September 18, 1955, unless the department determines that the safety and general welfare of the public will be better served by such owner or occupier being required to apply for a permit and the department gives written notice to such owner or occupier that application for a permit must be filed with the department within thirty days from receipt of such notice." It was the owner's position that although a permit was required, it would in most instances be granted. This merely permitted the State to control the type of access to be granted.

Section 39-1330, R. R. S. 1943, which covers the acquisition of control of access where a highway is being reconstructed, reads as follows: "In connection with the acquisition of real property for new right-of-way or additional right-of-way for any highway to be constructed, relocated, or reconstructed in either rural or urban areas and paid for in whole or in part with federal or state highway funds, the department may prescribe and define in purchase agreements or condemnation proceedings the location, width, nature, and extent of any right of access that may be permitted between such improved highway and the properties from which such right-of-way or additional right-of-way is acquired, but such prescription and definition shall in no case leave such private properties without a reasonable means of egress and ingress to a road." It is the position of the State that in the taking it did provide the owner with exactly the same means of egress and ingress as existed previous to the condemnation. The owner, on the other hand, contends that in the future there will be no probability of the granting of additional access.

It was the position of the trial court that no damages were awarded to the plaintiff as remainder damage. We cannot draw this conclusion from the record unless we ignore the testimony of the State's witnesses as well as portions of the testimony of the owner's witnesses.

Further, we must consider that there was a sharp conflict on the nature and extent of any remainder damage. The owner had the burden of proving that he sustained severance damages and also the amount of such damages.

It is apparent that the jury did not wholly accept the testimony of the State's experts because the damages assessed by the jury exceed the highest figure fixed by any of those witnesses. The low figure adduced by the owner on the value of the land actually taken was $600. It is apparent, therefore, that the jury had a low range for the land actually taken of from $422 in the State's testimony to $600 in the testimony for the owner. Any difference between these figures and the verdict actually returned would appear to reflect some award for remainder damage, including fencing, loss of trees and shrubs, parking, and access. Although the amount allowed would be very meager when compared with the testimony of the owner's witnesses, we cannot say the jury made no allowance. On the issue of commercial or industrial potential, a definite jury issue was presented. We must assume the jury rejected the possibility in the foreseeable future.

Is the jury required to accept either the testimony of the State's witnesses or the testimony of the owner's witnesses, or is it permitted to draw its conclusions from whatever portion of the testimony of any of the witnesses it decided to accept? Where as here there was a difference of opinion on the possibility of commercial development, and the extent of the damage sustained by control of access, it was privileged to do any of the three. In jury cases jurors are the judges of the credibility of witnesses and of the weight to be given their testimony, and within their province, they have the right to credit or reject the whole or any part of the testimony of a witness in the exercise of their judgment. State v. May, 174 Neb. 717, 119 N. W. 2d 307. A verdict under such circumstances will not be set aside unless it is clearly wrong. We cannot agree with the trial

court that the verdict was clearly against the weight and reasonableness of the evidence. To do so on this record would be to usurp the jury's prerogative.

The jury was permitted to view the premises before arguments by counsel but after all the evidence had been adduced and after it had been instructed by the court. We must assume that when the jury viewed the premises it had the conflicting contentions of the parties in mind. The case was argued by counsel immediately after the jury viewed the premises. This also permitted the parties to point up their respective contentions while the view of the property was still fresh in the minds of the jurors. Where a jury is permitted to view the premises involved in eminent domain litigation, the result of its observations is evidence which it may consider in connection with other competent evidence. See Leffelman v. City of Hartington, 173 Neb. 259, 113 N. W. 2d 107.

The owner complains that instruction No. 9 given by the trial court did not embrace section 39-1329, R. R. S. 1943, which involves the question of access on existing highways and is not the section applicable herein. The instruction did embrace section 39-1330, R. R. S. 1943, which specifically covered the instant situation, which was the acquiring of additional right-of-way for the reconstruction of an existing highway. Both sections provide that the owner cannot be denied reasonable means of egress and ingress. The owner also complains because certain provisions of section 39-1333, R. R. S. 1943, were not included in instruction No. 9. The provisions of this section are included verbatim in instruction No. 10. The owner tendered instructions embracing his theory on access. These were embodied verbatim in instruction No. 10 given by the trial court, and adequately covered the pleadings and evidence herein.

In Beavers v. Christensen, *ante* p. 162, 125 N. W. 2d 551, we held: "Instructions should be considered together in order that they may be properly understood,

and when, as an entire charge, they properly submit the issue to the jury, the verdict will not be set aside."

In Stahlhut v. County of Saline, *ante* p. 189, 125 N. W. 2d 520, we held: "If an examination of all the instructions given by the trial court discloses that they fairly and correctly state the law applicable under the evidence, error cannot be predicated thereon." There is no merit to the owner's complaint on the instructions.

For the reasons given, the order of the trial court sustaining the motion for a new trial should be and hereby is reversed and the cause is remanded to the trial court with directions to reinstate the verdict of the jury and to enter judgment thereon.

REVERSED AND REMANDED WITH DIRECTIONS.