MARY FULMER, APPELLANT, v. STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLEE.

134 N. W. 2d 798

Filed April 23, 1965. No. 35715.

Carl D. Ganz and Flansburg, Mattson, Field, Ricketts & Sorensen, for appellant.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, Warren D. Lichty, Jr., James J. Duggan, and James M. Winter, for appellee.

Clarence A. Davis, for amici curiae.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BOSLAUGH, J.

This is a proceeding by the State of Nebraska to secure control of outside advertising on land owned by Mary Fulmer which is adjacent to the Interstate Highway in Cass County, Nebraska. The action was instituted as a proceeding in eminent domain under section 39-1320, R. S. Supp., 1963, to secure a permanent easement for the control of advertising. The landowner refused to accept the award of the appraisers appointed by the county judge and appealed to the district court.

In the district court the action was tried upon the theory that it was a proceeding by the State to condemn a permanent easement upon the land of the plaintiff. Neither party has raised any issue in this court concerning the form of the proceeding or the nature of the right acquired by the State in the proceeding. We dispose of the case on the mutual theory upon which it was tried in the district court.

The jury returned a verdict in favor of the plaintiff landowner in the amount of $25. Her motion for new trial was overruled and she has appealed to this court.

An opinion of this court filed on December 11, 1964, determined that the judgment of the district court should be reversed and the cause remanded for a new trial. Fulmer v. State, *ante* p. 20, 131 N. W. 2d 657. Thereafter, reargument was granted.

The parties stipulated and agreed that the fair and reasonable cost of abstracting the proceeding was $25. The plaintiff was entitled to recover this expense under section 76-710.01, R. S. Supp., 1963, and the jury was so instructed. Thus, the verdict of the jury which limited the plaintiff's recovery to the $25 "abstract cost" was in effect a finding that the plaintiff had sustained no other

damages as a result of the taking of the easement to control advertising adjacent to the highway.

The plaintiff contends that the verdict and judgment are not supported by the evidence and that the instructions of the court which permitted the jury to return such a verdict were erroneous. The plaintiff argues that the verdict cannot be sustained because the evidence shows that she could have received a gross income of $40 per year from an advertising lease.

Instruction No. 5 advised the jury that the measure of damages for the taking of an easement is the difference in the reasonable market value of the property before and after the taking of the easement. This was a correct statement of the law. When an easement is taken, which leaves the landowner with property rights of material and measurable value, the compensation due the landowner is the damage to the entire property which is attributable to the taking of the easement and not the separate value of the easement. Dunlap v. Loup River Public Power Dist., 136 Neb. 11, 284 N. W. 742, 124 A. L. R. 400; Wahlgren v. Loup River Public Power Dist., 139 Neb. 489, 297 N. W. 833; Sump v. Omaha Public Power Dist., 168 Neb. 120, 95 N. W. 2d 209; Johnon v. Airport Authority, 173 Neb. 801, 115 N. W. 2d 426; Connor v. State, 175 Neb. 140, 120 N. W. 2d 916. The compensation due the landowner is to be determined by the difference in the value of the property before and after the taking, and not by separately valuing the easement or right that is taken.

In a particular case, the rule may result in a determination that the landowner is entitled to no compensation for the taking of an easement. In principle, the result is similar to that which may occur when the right of access to property is taken or destroyed. Ordinarily, it is a question for the jury whether the taking of the right of access has affected the value of the property, and this court cannot determine as a matter of law that the value of the property was diminished thereby.

Frank v. State, 176 Neb. 759, 127 N. W. 2d 300. See, also, Chaloupka v. State, 176 Neb. 746, 127 N. W. 2d 291; Balog v. State, 177 Neb. 826, 131 N. W. 2d 402.

Although there was evidence to the contrary, the State produced evidence that there was no difference in the value of the land before and after the taking of the easement; that the use of the land for advertising purposes would interfere with its use for agricultural purposes to some extent; and that the income produced from advertising use would be so small in comparison to the income received from agricultural use that in the negotiation of a sale of the land the income from the advertising use would be disregarded. This evidence supports the finding that the landowner was not damaged by the taking of the easement and is sufficient to sustain the verdict and judgment.

Our former opinion is withdrawn. The judgment of the district court is affirmed.

AFFIRMED.

SPENCER, J., dissenting.

I dissent from the majority opinion because I do not believe it should be possible to have a zero verdict in a condemnation action. It seems elementary to me that whenever private rights are taken for public use, there must be some compensation, nominal or otherwise, depending on the proof. To hold otherwise is to make condemnation nothing more than legal confiscation. To permit a zero verdict in a condemnation action is to make a mockery of our national and state constitutional provisions: "* * * nor shall private property be taken for public use, without just compensation." Fifth Amendment, Constitution of the United States. "The property of no person shall be taken or damaged for public use without just compensation therefor." Art. I, sec. 21, Constitution of Nebraska.

There is no question in my mind that regardless of the language we use, we have a complete taking of an interest in property in this action, but I will not prolong

this dissent with a discussion of the nature of the property right taken from the plaintiff. The statute under which the condemnation action is brought recognizes that a property right is being taken. Section 39-1320, R. S. Supp., 1963, reads, so far as material herein: "(1) The department is hereby authorized to acquire, either temporarily or permanently, lands, real or personal property or any interests therein, or any easements deemed to be necessary or desirable for present or future state highway purposes by * * * condemnation * * *. *Such lands or real property may be acquired in fee simple or in any lesser estate.* It is the intention of the Legislature that all property leased or purchased from the owner shall receive a fair price.

"(2) State highway purposes, as referred to in subsection (1) of this section * * * shall include provision for, * * *:

"(m) The control of outside advertising within the area adjacent to and within six hundred sixty feet of the edge of the right-of-way of the National System of Interstate and Defense Highways constructed upon any part of right-of-way the entire width of which is acquired subsequent to July 1, 1956, to the end that this state may qualify for and accept the provisions of 23 United States Code 131, as amended." (Emphasis supplied.)

Section 39-1320.03, R. S. Supp., 1963, makes clear that the State is actually acquiring rights. It reads, so far as material herein: *"Whenever advertising rights are acquired by the department pursuant to subdivision (m) of subsection (2) of section 39-1320, * * *."* (Emphasis supplied.)

While the petition of the State does not follow the language of the statute, if this statute means what it says, the State is actually acquiring rights which it *can use* for any public purpose. This is not the mere negative restrictive easement the State seeks to have us believe. In passing, I also observe that the State is

not acquiring all advertising rights along the Interstate Highway, but only those for which the federal government will reimburse it.

From the majority opinion, the problem is one of the measure of damages. The rule applied by the majority opinion, compensation is determined by the difference in the reasonable market value of the entire tract before taking and the reasonable market value of the portion remaining after taking, is the rule we have uniformly applied in the taking of land. It is no more than a rule of evidence applied to provide a measure of compensation to comply with the constitutional directive. Where it does not do so, a new rule should be adopted. It is the Constitution which governs and not rules we have adopted to effectuate the constitutional directive.

In the past, where the court was confronted with a situation where the rule could not accurately measure the damages in the taking and damaging of land, we have had no hesitancy in applying a rule which would fairly compensate the owner. See Graceland Park Cemetery Co. v. City of Omaha, 173 Neb. 608, 114 N. W. 2d 29.

In an eminent domain proceeding, we should adopt a working rule in an attempt to do substantial justice. I suggest no less is necessary here. To adopt a working rule will comply with the constitutional mandate. As Justice Holmes said in Boston Chamber of Commerce v. City of Boston, 217 U. S. 189, 30 S. Ct. 459, 54 L. Ed. 725: "* * * the Constitution * * * requires that an owner of property taken should be paid for what is taken from him. * * * And the question is what has the owner lost, not what has the taker gained." Here obviously the owner has lost the right to sell or lease advertising rights. This condemnation action completely extinguishes his right to control advertising on the strip embraced in the condemnation.

The fact that no physical property is taken creates the problem under the rule applied in the majority opinion.

To a jury where the State contends the dominant purpose of the land is agriculture, there is no "before and after." There is here a taking of certain rights which, quite distinct from the land or its value, have a definite commercial value of their own. I submit that where the rule of evidence applied is of such nature as to preclude the allowance of damages in a condemnation action, there is a perversion of the fundamental principles of justice. To deny relief to the owner of property under such circumstances is to permit the State to confiscate property piecemeal and thus permit the very thing our constitutional provisions were intended to prevent.